Filed 6/11/13  In re Christopher M. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CHRISTOPHER M., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. CHARLES E., Defendant and Appellant. | F066122 (Super. Ct. No. 516144) **O P I N I O N** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Thomas S. Szakall, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Robin L. Gozzo, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

_____

[*]     Before Levy, Acting P.J., Gomes, J., and Poochigian, J.

Appellant Charles E. challenges the sufficiency of the evidence to support the juvenile court's order issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] terminating his reunification services as to his three-year-old son, Christopher. Charles contends he substantially complied with his court-ordered services. Therefore, he further contends, the juvenile court erred in terminating rather than extending the time for him to complete them. We conclude substantial evidence supports the juvenile court's termination order and affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In July 2011, then 15-month-old Christopher was removed from the custody of his mother Melody by the Stanislaus County Community Services Agency (agency) because of Melody's drug use. Melody identified Charles, who was living in Calaveras County, as Christopher's biological father. Charles said he did not have a suitable home for Christopher at that time. Christopher was placed in foster care.

In October 2011, the juvenile court exercised its dependency jurisdiction, ordered Christopher removed from Charles and Melody's custody and ordered family reunification services. Charles's reunification plan required him to complete a parenting program and a drug and alcohol assessment and submit to random drug testing. The juvenile court also ordered weekly two-hour visitation and set a six-month review hearing in April 2012.

Over the next six months, Charles completed eight of ten parenting classes and was participating in one-on-one parenting sessions. However, he tested positive for marijuana twice and had yet to enter a drug treatment facility despite receiving a referral for outpatient drug treatment. Charles acknowledged that he could not smoke marijuana

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

if he wanted to gain custody of Christopher. He said he had to find a job and a place to live so he could support him. By April 2012, Charles was living with his girlfriend and her mother in a house. He was hoping to move in with his mother so that Christopher could visit him there.

In April 2012, at the six-month review hearing, the juvenile court found Charles and Melody made limited progress but continued their reunification services to the 12-month review hearing which it set for September 2012.

In August 2012, the agency filed its report for the 12-month review hearing and recommended the juvenile court continue reunification services for Melody and Charles. By that time, Melody was actively participating in her services plan. However, the agency had doubts about her ability to care for Christopher and felt she needed a psychological evaluation. Meanwhile, Charles completed his parenting program and was transitioned to intensive outpatient treatment in June 2012 because of his continuing marijuana use. In July, his counselor reported he participated in group sessions but appeared reluctant to fully engage in the recovery process. In August, after three unexcused absences, Charles was discharged from the program. Charles was not aware he was discharged from the program because he was working at an alpaca ranch. He told the social worker he would return to treatment. The agency reported Charles regularly visited Christopher and Christopher enjoyed their visits.

In September 2012, on the date set for the 12-month review hearing, the agency changed its recommendation and asked the juvenile court to terminate Charles's reunification services because he did not reenter drug treatment. The juvenile court set a contested 12-month review hearing for October 2012 and ordered Melody to complete a psychological evaluation.

In October 2012, the juvenile court conducted the contested 12-month review hearing over two sessions. Social worker Kathleen Grundy testified Charles was still not

3

in drug treatment. He attempted to reenter drug treatment in Calaveras County the day after the September hearing, but was told he needed a new assessment and referral from the agency. The agency subsequently scheduled an assessment for Charles in September but he missed it, explaining that he was ill. The agency scheduled a second assessment in September. Charles missed that appointment as well. His mother stated he was ill. The agency scheduled a third assessment in early October and Charles attended. During the assessment, he tested positive for marijuana and was deemed to need intensive outpatient drug treatment. Ms. Grundy said he had not begun treatment because the agency had to resubmit the contract.

Ms. Grundy also testified Charles told her his home would not pass inspection and she was unaware if he subsequently obtained another living arrangement. Following her testimony, the juvenile court continued the hearing and set it out nine days.

At the continued hearing, Charles's attorney made an offer of proof which was accepted that Charles would allow an assessment of his home, he returned to drug treatment the day before, and he believed he tested positive for THC[2] because he smoked tobacco from a pipe previously used to smoke marijuana.

At the conclusion of the hearing, the juvenile court continued services for Melody and set an 18-month review hearing.[3] The juvenile court found that Charles made "minimal" progress in his services plan and terminated Charles's reunification services. In so doing, the juvenile court stated it did not believe Charles's explanation as to how he

---

**2**     THC (tetrahydrocannabinol) is the principal psychoactive constituent of marijuana.

**3**     The juvenile court terminated Melody's reunification services at the 18-month review hearing and set a section 366.26 hearing. Melody challenged the juvenile court's setting order by writ petition (Cal. Rules of Court, rule 8.452) which we denied (*Melody M. v. Superior Court* (April 26, 2013, F066663) [nonpub. opn.]).

4

ingested THC and attributed his failure to progress in his services plan to "dragging his feet." This appeal ensued.

## DISCUSSION

Appellate counsel contends the juvenile court erred in terminating Charles's reunification services at the 12-month review hearing because Charles "substantially complied with his services plan." Appellate counsel, however, cites no statutory or case authority to support his contention, and the case authority he cites is for general principles only.[4]

When, as here, appellate counsel fails to present argument and authority, the court of appeal may deem the appeal abandoned. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119.) We decline to do so in this case. Instead, we construe the appeal as challenging the juvenile court's finding there was not a substantial probability of return and review the merits.

### *Substantial Probability of Return*

Section 366.21, subdivision (f) governs the proceedings at the 12-month review hearing. It requires the juvenile court to first determine whether the child can be returned to parental custody and if not whether reunification services should be continued.

If the juvenile court does not return a child to parental custody at the 12-month review hearing, it must either continue reunification services to the 18-month review hearing or set a section 366.26 hearing. (§ 366.21, subd. (g).) As pertinent here, the

---

[4]    For example, appellate counsel includes a quote from *David B. v. Superior Court* (2004) 123 Cal.App.4th 768: "We are looking for passing grades here, not straight A's." (*Id.* at p. 790.) He makes no attempt, however, to relate it to Charles's case.

Appellate counsel also cites *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415 which he concedes is factually distinguishable but nevertheless stands for the general proposition that "The focus during the reunification period is to preserve the family whenever possible. [Citation.]" (*Id.* at p. 1423.)

juvenile court must continue services if it finds a substantial probability the child will be returned to the parent's physical custody and safely maintained in the home. (§ 366.21, subd. (g)(1).)[5]

In order to find a substantial probability of return, the juvenile court must make all three of the following findings: (1) the parent consistently and regularly contacted and visited the child; (2) the parent made significant progress in resolving the problems that led to the child's removal from the home; and (3) the parent demonstrated the capacity and ability to complete the objectives of the treatment plan and provide for the child's safety, protection, and physical and emotional well-being. (§ 366.21, subd. (g)(1)(A)-(C).)

In this case, substantial evidence supports a finding Charles did *not* make significant progress in resolving the problems that required Christopher's removal. After a year of reunification services, Charles continued to use marijuana and did not have a suitable home for Christopher. Appellate counsel does not dispute that evidence. Instead, counsel argues Charles "substantially complied" with his services plan by completing other aspects of it such as parenting instruction. "Substantial compliance," however, is not the standard and compliance with one component does not, in this case, amount to "significant progress" as we explain.

A reunification plan is designed to remedy the problem(s) requiring the child's removal from parental custody. The plan is comprised of objectives the parent must meet and specific services the parent must complete to satisfy those objectives.

In this case, the agency was unable to place Christopher with Charles because Charles did not have a suitable home. Consequently, acquiring such a home became one

---

5    The juvenile court must also continue reunification services if it finds reasonable services were not provided to the parent. (§ 366.21, subd. (g)(1).) Appellate counsel does not challenge the reasonableness of services.

6

of Charles's reunification plan objectives.  Not long after Christopher was removed, the agency discovered that Charles used marijuana.  Thus, the agency referred him for a drug assessment to determine the level of treatment he required.  The agency also included parenting instruction in Charles's plan.  Parenting instruction is a common service provided not necessarily to remedy a specific problem, but to augment the services designed to target the core problem(s).

In assessing a parent's progress, the juvenile court considers the parent's efforts with respect to each component of the plan, but ultimately bases its assessment on the parent's overall efforts and success in addressing the core problem(s).  Thus, compliance in parenting instruction, for example, does not translate into significant progress in a case such as this where marijuana use and lack of a home were the core problems.

Having concluded substantial evidence supports a finding Charles failed to make significant progress, a required finding for substantial probability of return, we affirm the juvenile court's order terminating Charles's reunification services.

## DISPOSITION

The juvenile court's order issued on October 26, 2012, terminating appellant's reunification services is affirmed.